IDA G. SHEARMAN et al.

*v.*

ALPIN J. CAMERON, executor, &c., et al.

[Decided December 18th, 1909.]

1. Where a testator nominates his son as an executor, and also trustee of testator's interest in a partnership in which the son is a partner, and it is the son's duty, under the will, as executor, with the surviving partners, to determine testator's interest in the partnership, and, as trustee,

to agree with the surviving partners as to the terms on which testator's interest shall remain in the business for a given period, suit against the son by the beneficiaries under the will for discovery and accounting is properly brought in chancery, and is not barred by an accounting by the executors in the orphans court.

2. On balancing the books of a partnership of three members, it appeared that the liabilities of a former firm taken over by the existing firm exceeded the assets so taken over by a certain sum, and that sum was thereafter carried into its suspense account and never paid.—*Held,* that, in ascertaining the interest of a deceased partner, it was proper to charge that interest with one-third of such amount.

3. In ascertaining the interest of a deceased partner in the firm, an amount due one of the surviving partners by the deceased partner should not be deducted from the amount of the latter's interest, as in ascertaining such interest nothing can be deducted except an indebtedness to the firm.

4. Where executors of a deceased partner report to the orphans court a specified amount due from the firm, which is the total aggregate, less items, among which is a charge of a certain amount in favor of decedent's son, who was also a partner, and there was nothing in the account to show that the son, as an individual, claimed to be a creditor of the father's estate, the orphans court in approving the account did not pass upon the question whether the indebtedness to the son was a proper charge against the father's interest.

5. Where a partner by his will appoints his son a trustee of his interest in the partnership, and directs his executors to at once, upon his death, pay to his daughter an amount not exceeding $1,000, for her immediate support, to be taken out of his interest in the partnership, and the executors' account filed in the orphans court showed that up to a date specified they had paid the daughter $704.40, and the trustee's account, filed in the chancery court, claims credit as if the daughter had received $1,000, the trustee is only entitled to a credit for $704.40.

6. Where the will of a deceased partner directed the trustee of his interest in the partnership to pay quarterly "from and after my death" certain annuities out of the income, the annuities should be paid from the date of his death, although by the terms of the will his interest in the partnership was to be determined as of a date three months subsequent to the date of his death.

7. If a trustee invests money in unauthorized securities, the *cestui que trust* is entitled to the profits; and where a partner leaves his interest in the partnership by will to another partner in trust, and directs that such interest remain in the business for a specified time from a certain date next succeeding his death, on such terms as the trustee may think just, and after that date to be invested according to the trustee's best judgment, and the trustee allows the interest to remain during the five-year period at an agreed rate of ten per cent., if the trustee allows the trust fund to remain in the partnership after the period specified, he should be held to account for it at the same rate.

8. Where a son is executor of the estate of his mother, and receives a certain sum from the sale of property held jointly by the father and mother, which amount is charged to him as executor, and he permits his father to take and keep the money, and he is subsequently appointed executor of his father's estate, it is proper for him to charge such amount against the father's estate.

9. Where a testator leaving real estate dies after May 20th within any given year, his personal estate is chargeable with the payment of taxes assessed as of May 20th of that year.

10. An interest of a deceased partner was continued in the business at an agreed rate as to profits.—*Held*, that no charge should be made against the executors, the surviving partners, or the trustee appointed by the deceased partner's will to hold his interest in the business on account of the good will, as such interest continued to receive the benefit of the good will.

Heard on bill, answer, replication and proofs in open court.

The complainants in this bill are grandchildren of Alexander J. Cameron, who, during his lifetime, was a resident of Ridgewood, in this state. He died on the 30th of September, 1891, leaving him surviving a daughter, Mary Jane Crowley; a son, Alpin J. Cameron, one of the defendants herein; a daughter, Alice E. Cameron; Ida G. Graydon (now Shearman), Carrie L., Alexander J., J. Alpin and Jessie M. Graydon, children of a deceased daughter; Agnes K., Alexander A., Alice A. and Kathleen Maxwell, children of a deceased daughter; Alpin W. Cameron, son of Alpin J. Cameron aforesaid; and Daniel C. and Mary C. Crowley, children of Mary Jane Crowley.

He left a last will and testament, dated the 10th of March, 1891.

The eighth clause of the will is as follows:

"Whereas, I am a partner in the firm of A. J. Cameron & Co., which consists of my son Alpin J. Cameron and William V. Denegre and myself, we being equal partners, now I do hereby give, devise and bequeath all my interest in the said firm and in the assets and business thereof, whether real or personal, unto my son Alpin J. Cameron of the City, County and State of New York. in trust, however, and to, for and upon the following uses, trusts and purposes, that is to say:

"In the first place, I desire that my executors shall take out of the business of the said firm, or out of my share thereof, such moneys as may be necessary to pay my debts, funeral and testamentary expenses, and at once upon my death to pay to my daughter Alice E. Cameron, if she de-

sires it, an amount not exceeding the sum of one thousand dollars, so that she may have in her hands without delay the pecuniary means necessary for her immediate support.

"I direct my executors to take from my share of the firm the sums necessary to pay the above named three legacies to the hospital and churches within one year after my death.

"In the second place: I wish my said executors with the surviving partners of the said firm to determine and ascertain my interest in the said firm upon the thirty-first day of December next succeeding my death, and I direct that that interest thus determined shall remain in the possession and management of the surviving partners of the said firm for a period of not over five years from and after the thirty-first December next succeeding my death, my said trustee making such equitable terms and arrangements as to the share of my estate in the profits of the said business as he may think just and reasonable. In the third place, I direct that upon the expiration of the said five years my estate shall be severed from the said firm, and shall thereafter when paid (my executors and the said surviving partners having a reasonable time to effect such severance and payment) be and be kept safely and securely invested by my said trustee according to his best judgment together with any accumulations of profits of my share during the said term, or before.

"Out of the income arising from my share of the firm profits or from the said fund my said trustee shall pay quarterly from and after my death to my daughter Mary Jane Crowley during her life, the sum of six hundred dollars per annum, and to my daughter Alice E. Cameron during her life, the sum of three thousand dollars per annum besides said one thousand dollars if she requires it, and at the expiration of the said five years or as soon thereafter as my said executors and the surviving partners can separate the share of my estate from the said firm and pay it to my said trustee, I direct that the whole income shall, subject only to the said annuity to my daughter Mary Jane Crowley, belong absolutely to my daughter Alice E. Cameron for and during the term of her natural life, my trustee collecting and paying to her the whole of the income less the said annuity to my daughter Mary Jane Crowley and the expenses of the said trust, and upon the death of my daughter Alice E. Cameron I direct that my said trustee shall pay to my said daughter Mary Jane Crowley the sum of ten thousand dollars and upon such payment her said annuity shall cease."

The clause then proceeds to vest a power of appointment in Alice E. Cameron, and to make other provisions which, in view of the circumstances, are not material.

Alpin J. Cameron and Alice E. Cameron were nominated as executors of the will.

The executors qualified and filed an account as executors in the office of the surrogate of the county of Bergen, in June, 1899. The bill charges that this is a partial account and is incomplete, and that a certain schedule therein referred to as being at-

tached was not attached; and that in the said account there was a statement that the schedule aforesaid fixed the balance to the credit of Alexander J. Cameron in the firm of A. J. Cameron & Company at $37,741.63, and that the complainants never saw the schedule aforesaid and never received any notice of the filing or passing of the account in the orphans court.

The bill proceeds to charge that Alexander J. Cameron was, at the time of his death, a member of the firm of A. J. Cameron & Company, and that the other members of the firm were Alpin J. Cameron and William P. Denegre, the three being equal partners; and that after the death of Alexander J. Cameron, the surviving partners continued the business in the old firm name until the present time. And it is charged that the executors and surviving partners did not determine and ascertain the interest of Alexander J. Cameron in the assets and business of the firm upon the 31st day of December next succeeding his death, which was December 31st, 1891, as they should have done in pursuance of the terms of the said will; and that the ten per cent. per annum which, by the account as filed in the orphans court, was allowed upon the balance which that account found to be to the credit of Alexander J. Cameron in the business of A. J. Cameron & Company, was not a just and equitable arrangement as to the profits of the said business which should be attributed to the share of the estate of A. J. Cameron therein, as provided for in the said will.

The bill proceeds to charge that the interest of A. J. Cameron, in the firm of A. J. Cameron & Company, upon the 31st day of December next succeeding his death, was greatly in excess of the amount shown in the account filed in the orphans court by the executors, which, it will be recalled, was $37,741.63; and that the said interest of Alexander J. Cameron, or his estate, in the said business has remained, from the time of his death to the time of the filing of the bill, in the said firm without any severance and investing, as required by the terms of the will.

The bill further charges that Alice E. Cameron died on the 6th of May, 1905, leaving a last will and testament in which she attempted to exercise the power of appointment vested in her by the will of Alexander J. Cameron as above mentioned.

The bill further charges that the complainants have not the knowledge concerning the interest of Alexander J. Cameron in the business of A. J. Cameron & Company at the time of his decease, and require discovery.

The bill further charges that Alpin J. Cameron, the executor and trustee, has paid to Mary Jane Crowley and to Alice E. Cameron more money than it was proper for him to pay under the terms of the will and the trust. And it is further charged that Alpin J. Cameron, the trustee as aforesaid, and William P. Denegre, the partner, have refused to disclose to the complainants information concerning the business and the shares and the interests of the estate in the business, and that no proper and legal accounting can be had without the aid of discovery in behalf of the complainants.

It is therefore prayed that discovery be made by Alpin J. Cameron and by William P. Denegre, and that the interest of the estate in the firm of A. J. Cameron & Company be ascertained and determined in accordance with the provisions of the will, and that, when ascertained, it shall be severed from the business of the firm, and that the said interest, and such profits as shall be legally found to be due with respect thereto, shall be accounted for by the said Alpin J. Cameron as trustee, and shall be distributed in accordance with law and the provisions of the will.

The answer of Alpin J. Cameron admits many of the charges in the bill, but maintains that the accounting in the orphans court was final, and states that the actions of the said defendant as executor and trustee were regular and legal, and that the complainants are not entitled to relief in this court, and that the defendants should be dismissed therefrom.

The will of Alice E. Cameron, in which she sought to exercise the power of appointment aforesaid, came before this court and was passed upon in the case of *Cameron* v. *Crowley* (*Vice-Chancellor Garrison, 1907*), *65 Atl. Rep. 875.* Under the decision in that case all of the grandchildren, among whom are the complainants, are *cestuis que trust* in this matter.

*Mr. Marshall Van Winkle,* for the complainants.

Mr. *Cornelius Doremus* and Mr. *Gilbert Collins,* for Alpin J. Cameron, trustee.

Mr. *William Pennington,* for Mary J. Crowley, Daniel C. Crowley and Mary C. Crowley.

GARRISON, V. C.

The first matter that required consideration was whether this was a proper case for this court to exercise its jurisdiction.

It seemed to me that it clearly was.

With respect to the subject-matter involved, the defendant Alpin J. Cameron was by the testator left in such a delicate position that the interposition of the court of chancery, under the circumstances, was practically imperative. Alpin J. Cameron, the son of the testator, was one of the executors of the will. He was one of the partners in the firm in which the testator had a very large investment, and he was also to be trustee of the interest of the testator in the said firm. Under the provisions of the will it became his duty, as one of the executors, to agree with himself, as one of the partners, what the interest of the testator was in the firm, and then, as trustee, to make with himself, as one of the partners, such equitable terms and arrangements as to the profits which should be allowed upon the share of the estate in the said business. His duties and interests as surviving partner, executor and trustee were such that a case was clearly made out for the court of chancery instead of leaving the matter for settlement in the orphans court. The necessity of discovery, the necessity of bringing the surviving partners before the court as parties, the need which the complainants had of the peculiar features of equity jurisdiction which are lacking in the orphans court in such a case, all made for establishing the special reasons which appeal to the jurisdiction of this court and induce it to take over the matter from the orphans court.

In my view the principles are so well settled and this case so clearly comes within them that it is unnecessary to elaborate. The authorities will be found collected in the court of chancery and the court of errors and appeals in the case of *Filley* v. *Van Dyke* (*Vice-Chancellor Garrison, 1908*), *74 N. J. Eq.* (*4 Buch.*)

*219;* (*Court of Errors and Appeals, 1909*), *75 N. J. Eq.* (*5 Buch.*) *571.*

The technical objection interposed by the defendant that the accounting by the executors in the orphans court would bar relief in this court is without merit. Under the will the trustee had cast upon him the duty of securing the interest of the testator in the business of A. J. Cameron & Company, and it is that trustee who is sought here to be brought to account. I do not think it possible that, because as executor he filed an account in the orphans court and stated the amount which he said had been ascertained as the interest of A. J. Cameron in the business aforesaid, this is conclusive upon the parties. In my view it is perfectly clear, under the circumstances of this case, that what that interest was must be ascertained and settled in this court upon equitable principles.

Upon determining that this court would assert its jurisdiction an interlocutory decree was then entered by which it was ordered that the defendant Alpin J. Cameron, as trustee, should make and render an account in this court of the estate bequeathed to him in trust, less the debts, legacies and testamentary expenses directed by the testator to be paid thereout, as such debts, legacies and testamentary expenses have been established by the accounting of the executors in the orphans court of Bergen county and the decree of the said court on the said accounting, and should further account for such income on the balance as said trustee may be lawfully chargeable with from and after the death of Alice E. Cameron. The matter was referred to a master, and the trustee was directed, within a given number of days, to present to the master his account, to which any party might present written exceptions to the master, and thereafter either party might apply to the court for directions as to the scope of the testimony that should be required or permitted under the exceptions. Various such applications were made to the court, and directions and instructions issued in pursuance thereof. By an agreement between the parties expert accountants were employed to investigate the books of A. J. Cameron & Company, and they made an extensive report which accompanies the master's report.

.The master's report and the exhibits, including the report of the expert accountants aforesaid, cover many hundreds of pages. Upon the coming in of the master's report exceptions were filed by each of the parties thereto, and since, with respect to some of them, the court desired to send the matter back to the master, all questions were reserved until the coming in of the supplemental report of the master. When that supplemental report came in all of the exceptions of the parties were considered and are now to be disposed of.

. The accounts and report are so voluminous, and the questions raised are of such a character that, I think, in the interest of clearness, I should state the issues and findings and my determination thereon in narrative form, rather than attempt to take them up piecemeal under specific exceptions.

Prior to 1880, Alexander J. Cameron and Alpin J. Cameron were partners in a firm called A. J. Cameron & Company. W. P. Denegre was an employe of that firm. On the 1st day of January, 1880, a new firm was formed composed of Alexander J. Cameron, Alpin J. Cameron and W. P. Denegre, using the same firm name.

We have no books of the old firm. The books of the new firm, under an account headed "Old Books," began with two items. They charge themselves with liabilities, under date of January 1st. 1880, "to sundries, $68,563.08." They credit themselves as with assets, under the same date, "by sundries, $58,499.48."

There is no item showing anything to the credit or debit from the old books in the individual accounts opened with Alexander J. Cameron or with Alpin J. Cameron, but under date of January 1st, 1880, Denegre's account opens with a credit "by old ledger, 249, p. 3, $11,063.49."

The details of the items of the "old book" account set forth above appear in a journal then opened, and that journal account does not contain any items concerning the individual accounts of the partners, excepting the $11,000 item above alluded to, credited to William P. Denegre.

With respect to the matter of determining and ascertaining the interest of Alexander J. Cameron, the testator, in the firm of A. J. Cameron & Company, which, under the eighth clause of

the will, the executors with the surviving partners were to do, the facts proven are as follows:

Some time in the year 1892, and after the books had been made up as of December 31st, 1891, a brother of Alexander J. Cameron, named Allan Cameron, was requested to come to the office of the firm and go over the books, and he did so, and ascertained, in conjunction with the surviving partners, that the interest of Alexander J. Cameron in the firm of A. J. Cameron & Company, as shown by those books, was $48,306.56, and that certain deductions should, in his judgment, be made therefrom.

Subsequently, and on the 8th day of November, 1893, Alpin J. Cameron desiring to have this in writing, requested that Allan Cameron reduce it to writing, and he did so, the writing being as follows:

"NEW YORK, November 8th, 1893.

"Mr. Alpin J. Cameron, in account with the Estate of Alexander J. Cameron.

Dec. 31st. Bal'ce to credit of Alexr J. Cameron on books of

| | | |
|---|---:|---:|
| A. J. Cameron & Co. this date................ | | $48,306.56 |
| Less his 1-3 deficiency of $6,887.87..... | $2.295.95 | |
| Due Alpin J. Cameron as per old books | | |
| Dec. 31. 1881..................... | 8,268.98 | |
| | | 10,564.93 |
| Actual balance due Estate of Alex J. | | |
| Cameron ................................ | | $37,741.63 |

"The above account is taken by me from the books of A. J. Cameron & Co. and submitted to Alice E. Cameron for approval and which accts and Bal'ce of $37,741.63 I find to be correct.

"ALLAN CAMERON.

"New York, Nov'r. 8th, 1893."

Shortly after the death of Alexander J. Cameron (which occurred on the 30th of September, 1891), a new book was opened termed "Private Ledger," and this book starts with the credit to Alexander J. Cameron (or his estate) of $48,306.56. The first item against this sum is $2,295.95. This item is the one mentioned in the memorandum of Allan Cameron as "less his 1-3 deficiency of $6,887.87 = $2,295.95."

The first ledger opened by the new firm, in the account headed "Old Books," as aforesaid, started, as has been stated, with sums of debit and credit. From an inspection it will appear that the

debits exceeded the credits by something over ten thousand dollars. Sundry additions are made to each side of the account, and on the 31st of December, 1882, the account is balanced. At that time, as appears from the account, there was an excess of liabilities over assets of $6,887.87—in other words, the firm was $6,-687.87 short of making these two accounts balance, and this was distributed among the partners as a loss, upon the basis of one-third each.

In the private ledger the one-third above mentioned is charged against the account of A. J. Cameron, or the estate of Alexander J. Cameron, deceased, and thereafter the income on the amount of the interest of Alexander J. Cameron in the firm was calculated upon a total reduced by this sum.

In 1899, on the 1st of June, the executors of Alexander J. Cameron, deceased, filed in the orphans court of Bergen county an account. After stating that no inventory was taken, having been waived by the heirs, they charge themselves with some small amounts of cash, and then with the following item:

"1892. Jan. 1. To balance to credit of Alexander J. Cameron in the firm of A. J. Cameron & Co. Yarn Merchants of New York and Philadelphia, of which firm Alexander . J. Cameron was a member. This balance was determined at the request of the Executors, by Allan Cameron of Westford, Mass., brother of Alexander J. Cameron. See Allan Cameron's statement accompanying this account...................................... $37,741.63"

The next item under it is as follows:

"The above interest of Alexander J. Cameron was invested with A. J. Cameron & Co. with the understanding that A. J. Cameron & Co. would pay for five years or longer at rate of 10% per annum on balance of the account."

Items then appear calculating ten per cent. on $37,741.63 or less (the lesser sum or principal being arrived at by deductions therefrom with which we are not now concerned).

On the private ledger aforesaid there was no deduction of any other sum, initially, than the $2,295.95 above referred to. The $8,268.98 above referred to is not found in the private ledger,

and, in fact, is not found in any of the books of account produced.

The careful examination made by the experts agrees so substantially, as to the interest of Alexander J. Cameron in the business as of December 31st, 1891, with the result reached by Allan Cameron, that I shall adopt the result reached by the latter, and fix the initial figure of such interest at $48,306.56, as he did.

I do not think there can be any substantial dispute about the propriety of deducting from this sum the item of $2,295.95 above referred to. That sum is the one-third of the sum of $6,887.87, and this last sum is the difference between the credit and debit sides of the "old books" account above referred to. When the new firm started in 1880, the first thing that appears in their books was this account. It was taken over, evidently, from the old firm, and contained amounts to be paid and amounts to be received, which were placed under their appropriate columns in the account. Subsequently, this account was balanced, and it was shown that the liabilities thereunder exceeded the amount received by $6,887.87; and as the partners shared profits and losses equally, each partner was liable for his one-third of this sum. After the time of balancing, as aforesaid, this item of liability was carried into suspense account, and was never paid. Under these circumstances, it seems perfectly clear to me that it was proper, in ascertaining the interest in the firm of this partner, to charge him with his one-third of this liability.

The next item which it is necessary to consider at length is that of $8,268.98.

The theories of the respective parties concerning this are as follows: The complainants contend that, since the ascertainment and determination by Allan Cameron, as now confirmed by the investigation of the experts, show that the interest of Alexander J. Cameron in the firm at the time in question was $48,306.56, the matter is practically settled, and there is no ground upon which the defendant may properly claim the right to deduct this sum from that initial ascertainment and determination of the amount of the *corpus.*

By referring back to the memorandum made by Allan Cam-

eron at the time of the ascertainment by him, it will be found that he states the matter as follows: "Due Alpin J. Cameron as per Old Books, Dec. 31, 1881, $8,268.98," and it will be seen that he includes this sum as among those to be deducted from the aggregate sum which he finds to be the interest of Alexander J. Cameron in the business as of December 31st, 1891.

The complainants contend that if this was,a debt due from Alexander J. Cameron to Alpin J. Cameron, it should have been treated as such, and should have been proven, and that the whole subject-matter being open to inquiry, and no proofs being adduced by Alpin J. Cameron to sustain the same, there is no basis for allowing it.

On behalf of the defendant Alpin J. Cameron it was urged that since this item was deducted by Allan Cameron that fact is determinative; and further, that since the amount reported by the executors in their account to the orphans court was the total as found by Allan Cameron, less this deduction, the reduced amount thereby becomes the initial charge against the trustee, and this item of $8,268.98 must be held to have been passed upon and allowed at that time.

I do not see how it can be seriously contended that in any ascertainment of the interest of Alexander J. Cameron in the firm there could be any propriety in diminishing what the books showed was his interest by this sum of $8,268.98. It cannot possibly be correct to say that a partner's interest in a firm is affected favorably or unfavorably by sums which he owes, outside of the firm's business, to his partners, or by sums which, outside of the firm's business, are owed to him by his partners. His interest in the firm's assets, as shown upon an accounting, is utterly irrespective of what is owed to him by anyone excepting the firm, or by what he owes to anyone excepting the firm, and in this respect it makes no difference whether the amounts that he owes outside of the firm are to his partners or to strangers, or whether the amounts due to him outside of the firm are due from partners or strangers. The amount in question was certainly nothing that was owed by him by reason of the partnership relation. There is not the slightest suggestion in the testimony, or in any of the books, that this $8,268.98 had any

connection whatever with the business of the firm with which we are concerned—that is, the firm composed of the two Camerons and Denegre, which was formed January 1st, 1880.

The only serious argument of the defendants upon this point was based upon this reasoning: That apparently there were some transactions between Alexander J. Cameron and his son Alpin, probably in connection with the old firm (the suggestion arising, undoubtedly, out of the fact that there is mention made of the "old books"), and that, as a result of these transactions, there was a credit in favor of the son against the father of this item of $8,268.98, and that when Allan Cameron came to make his determination and ascertainment of the interest of Alexander J. Cameron in the business, he considered that this debt, which he believed to be due and from the father to the son, should be deducted before the son, as executor or trustee, should be charged with the *corpus* of the estate to be so held by him. And, therefore, they say, when the total amount of the interest was arrived at, Allan Cameron, in his statement, deducted from such total items, among them this one, which, as therein set forth, was for a debt due by the father, the testator, to the son, the executor and trustee.

By referring back to the item reported in the account of the executors to the orphans court, it will be found that the amount there stated to be due from the firm to the estate is $37,741.63 (which is the total aggregate, less items including the item of $8,268.98 that we are inquiring about), and that there is memorandum, "see Allan Cameron's statement accompanying this account." The complainants allege, and, I think, prove, that this statement did not accompany the account, and could not be found in the surrogate's office. However this may be, there was nothing in this account to show that Alpin J. Cameron, as an individual, claimed to be a creditor of the estate of Alexander J. Cameron, of which he was one of the executors, to the amount of $8,268.98. And under these circumstances I do not think that it can be properly held that the orphans court passed upon this question at all, even technically. There is no pretence that it actually passed upon it—that is, that the matter was in any such way exhibited before the orphans court that it can

honestly be said by anyone to have considered and passed upon the propriety of allowing this debt claimed to be due by the executor out of the estate of the decedent.

In my view of this case, as before expressed, it is undoubtedly the right of this court, under all the circumstances, to now ascertain and determine what amount the trustee shall be charged with as the *corpus* of the estate for which he is responsible, said *corpus* to consist of the interest of Alexander J. Cameron, his decedent, in the business of A. J. Cameron & Company as of December 31st, 1891.

In this view of the matter this item cannot be allowed as a deduction.

Excepting the reference to it contained in the memorandum of Allan Cameron, which the defendant Alpin J. Cameron produces at the trial, there is no other proof or suggestion of proof concerning it. No old books are produced in which any such item appears, and no oral testimony is produced to prove any such item. Alpin J. Cameron himself was utterly unable in any way to prove anything upon which any proper finding in his favor with respect to this item could rest.

Since I do not find that it was proper at all to consider this item in connection with the interest of Alexander J. Cameron in the firm of A. J. Cameron & Company, since it had no connection with his partnership account at all, I find that Allan Cameron's including it in his statement is immaterial; that he should not have included it, and that no one is bound by the fact that he did include it.

Finding, as I do, that the real question is whether this item is one that Alpin J. Cameron has the right, as against the estate of his father, to charge against the latter, and that he has not produced any proof whatever to justify crediting him with the same, it would not be proper to do so, and, therefore, I find that the initial credit of $48,306.56 should be reduced by the $2,-295.95 before dealt with, but not by the $8,268.98 just dealt with.

The result, therefore, is that we have ascertained and charged the trustee with the proper *corpus* of the estate, subject, however, to certain other deductions, the propriety of some of which is not

questioned by anyone, and the propriety of others being the subject of attack concerning which this opinion will be found to deal.

It will be recalled that, after the ascertainment provided for in the will was made, the will directs that the trustee shall arrange for an equitable and just return upon this interest, which is to remain in the business for a period not exceeding five years. The arrangement made was that ten per cent. interest should be allowed upon the ascertained interest of A. J. Cameron's estate remaining in the firm. At first the complainants contended that this was not a just and reasonable amount to allow out of the profits. Subsequently, they conceded that it was, and all contest over this matter was abandoned before the master and before me. Therefore, it is settled in this case that ten per cent. upon the ascertained interest of the decedent in the business was proper, and all calculations are made upon that basis.

With respect to the question of payments out of income to Alice E. Cameron, a question arose by reason of the language of the will, but it seems to me that the matter is perfectly plain when carefully considered. It will be found, by referring to the clause of the will quoted in the beginning of this opinion, that the testator provides, among other things, that the executor shall take out of the business of the firm, or out of his share thereof, such moneys as may be necessary to pay debts, funeral and testamentary expenses, and at once, upon his death, to pay to his daughter Alice, if she desires it, an amount not exceeding the sum of $1,000, which, as he sets forth, was for the purpose of putting into her hands without delay the pecuniary means necessary for her immediate support. It appears from the proofs and from the accounting of the executors filed in the orphans court that up to December 31st, 1891, the executors had paid to Alice E. Cameron $704.40. In the account filed in this court by the trustee, the latter, under date of December 17th, 1891, has two items as follows:

"Alice E. Cameron, Account of annuity 3 months at
$3,000 per year............................ $750.00
"Alice E. Cameron, Legacy.................... 1,000.00"

I am clearly of opinion that, in the light of the portion of the will just above referred to, the trustee is only entitled to credit for the $704.40 on account of the $1,000 legacy, and that such $704.40 should come out of the *corpus* of the estate, as that was clearly the intention of the testator as above stated.

It will be found that he provides that out of the *corpus* she is to have an amount "not exceeding $1,000, if she desires it." All that she desired—or, at least, all of such desire that they responded to—was to the extent of $704.40; and that is the only sum that the accountant is entitled to allowance for with respect to this $1,000 legacy.

With respect to the time when the income is to be paid, I find as follows: While the will provides that the ascertainment of the amount of interest that the testator had in the business shall be determined as of December 31st succeeding his death, and that then the allowance of profits thereon shall be made, it is proper, under the law applicable here, to commence the income to the annuitants from the date of the death, namely, September 30th, 1891. The will itself provides upon this subject as follows: "Out of the income * * * my said trustee shall pay quarterly from and after my death," &c.

It will be recalled that, under the will, $600 of income each year was to be paid to one daughter, Mrs. Crowley, and $3,000 to the other daughter, Alice E. Cameron, and that this was to continue for five years from the 31st of December, succeeding his death, which was 1891.

The trustee's account showed that during these five years much more than these sums of money were paid out to Mrs. Crowley and to Miss Cameron by the trustee. This he had no right to do, and the accounts must be so adjusted as to comply with the requirements of the law in this respect.

Under the directions of the court the master has stated the accounts as the court finds that he should in these particulars. He has first ascertained the interest of Alexander J. Cameron in the firm of A. J. Cameron & Company, as of December 31st, 1891. He has then deducted the one-third of the liability which, as I have before stated, I find proper to be deducted, and the debts, funeral and testamentary expenses as provided by the will,

and certain other items which need not be specifically referred to; and has thus reached what I should refer to as the "primary *corpus*"—that is, the sum upon which the allowance of profit or income is to be calculated, such profit or income, as before stated, being properly fixed at ten per cent. From the date of the death, and for the five-year period, the accountant is credited with $3,600 a year, being the $600 of annuity to Mrs. Crowley and the $3,000 of annuity to Miss Cameron. After the five-year period, he is credited with the total income on the *corpus,* because after that period the entire income was payable to Miss Cameron. After Miss Cameron's death he is to be credited with $10,000 out of the *corpus,* which was payable to Mrs. Crowley. After that sum is deducted a new sum is reached as the *corpus,* and during the time that that continued in the business, unsevered, he is chargeable with the ten per cent. as agreed upon.

With regard to the matter of the allowance of interest as against the trustee, and when the ten per cent. as the fixed amount of profits allowed on the *corpus* shall cease, my findings are as follows: All the books that were furnished by the trustee to the court bring the account no further down than December 31st, 1906, and, consequently, all calculations cease there. On November 13th, 1906, an order was made in this cause under which the trustee brought into this state and deposited $20,500 at three and one-half per cent. interest, and it was stipulated between the counsel for the respective parties that, as to so much of the estate chargeable against the trustee, the proper allowance of interest against the trustee is the sum of three and one-half per cent., which, as above stated, was the amount received by him on that sum.

With respect to the amount of *corpus* with which the trustee is found to be chargeable, over the sum of $20,500, I find that he should be charged with ten per cent. interest thereon.

So far as appears from the proofs, he has retained this sum (in excess of $20,500) in his business, and I see no reason why, while it is there, it should not receive the same allowance for profit as it always did receive from the time that it was first left in the business under such an arrangement as to profits.

It is not necessary to cite authorities to establish the proposition that if a trustee invests money in an unauthorized security and makes profits, the *cestui que trust* are entitled to the profits thus made on their *corpus*.

Since it does not appear that there was any severance as provided for by the will, this rule applies to the trustee, and the ten per cent. on such excess of the *corpus* over $20,500 should have charged upon it, as against the trustee, ten per cent. interest.

Among the items passed upon by the orphans court and allowed in favor of the executors of Alexander J. Cameron was one of $1,500. Since, under my instructions, the master was to allow all of the debts, funeral and testamentary expenses, and take them out of the *corpus,* this item was, among others, deducted in the ascertainment of the primary *corpus*. The propriety of this allowance in favor of the trustee is challenged by the complainants, and the facts and my findings with respect thereto are as follows:

In the account filed by the executors of Alexander J. Cameron's estate in the orphans court on the 1st of June, 1899, and duly passed by the decree of that court, they claim credit, among other things, for an item as follows:

"Cash. Estate of C. C. Cameron, being amount
    collected by Alexander J. Cameron from sale
    of real estate in Boston, Mass. Voucher 7 . . . . . $1,500.00"

This, together with all the other items for which the executors claim credit, were passed upon and allowed by the orphans court. The complainants now produce an account from the orphans court of Bergen county in the matter of the estate of Catherine C. Cameron, of which estate Alpin J. Cameron was the sole surviving executor. And in that account, under date of June 3d, 1899, there is, among the items with which the executor charges himself, the following:

"Proceeds of sale of property in Boston, Mass.,
    held jointly by A. J. and Catharine C. Cam-
    eron . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $1,500.00"

The argument of the complainants upon this point was that by this last-mentioned account Alpin J. Cameron showed that he had received this $1,500 as executor of his mother's estate, and therefore, of course, had no right to charge the same $1,500 against his father's estate. There could be no doubt about this if these were the facts. But I do not find that the proofs produced before me show that these were the facts. It is true that they show that when he was accounting as executor of his mother's estate he charged himself (as, of course, he should do) with whatever, as executor, came to his hands, or that for which he was responsible. Since, under the proofs, it is shown that he was responsible for the proceeds of the sale of his mother's property, and had permitted his father to take and keep the money, it was, of course, proper for him to charge himself with this $1,500 for which he was thus responsible. But the proofs do not show that he ever actually received the money from his father—in fact, they prove that he did not. Therefore it was entirely proper for him, as against his father's estate, to claim the $1,500 which his father owed to him as executor of his mother's estate.

Since this matter was included in the items of charge and discharge before the orphans court in the settlement of the estate of the father, Alexander J. Cameron, and was passed upon there in favor of the executors, and since I find that it was properly allowed, I have instructed in this suit that it be included among the items to be deducted from the amount ascertained to be the interest of A. J. Cameron in the business of A. J. Cameron & Company in accordance with the provisions of the will.

The complainants object to the allowance out of principal of taxes for the year 1891, claiming that the same was a lien upon the real estate, and should not be charged against the personal property account of the estate. I find that, under the law, where a testator leaving real estate dies after the 20th of May of any given year his personal estate is chargeable with the payment of the taxes which are assessed as of the 20th of May of that year. *Brown* v. *Brown* (*Vice-Chancellor Garrison, 1907*), 72 *N. J. Eq.* (2 *Buch.*) 667. The item or items in question, therefore, are properly deducted from the principal or *corpus*.

Neither the master nor this court have allowed anything as

against the trustee, the executors or the surviving partners on account of the good will of the business of A. J. Cameron & Company. This is in accordance with the view which I take of this case, and because I do not find it proper in this case to make any such allowance. I shall not stop to burden this already long opinion with any reference to the authorities concerning the good will of the business in which a decedent was interested at the time of his death, because I think such law inapplicable to the case in hand. All of the interest of Alexander J. Cameron in the business of A. J. Cameron & Company has been, down to the filing of the bill in this suit, continued in the business, and an account which it has been agreed is a fair amount as that interest's share of the profits of the said business has been allowed on it, and such allowance (excepting with respect to an amount which the complainants themselves required to be taken out) has continued down to the time of decree.

Of course, since the death of Alexander J. Cameron the firm has lacked his personal efforts, and has made what has been agreed upon all hands to be a fair allowance of profit for the amount which his estate had invested in the business. Under these circumstances, I do not think that it would be proper to hold that, in addition thereto, an allowance in favor of the estate should also be made for good will. Since I find that, under the circumstances of this case, the decedent's interest in the firm has received the benefit of the good will, which would otherwise be attributable to his share, I conclude that no further or other allowance should be made specifically therefor.

With respect to the complainants' objection to the allowance of commissions to the executors of Alexander J. Cameron's estate, and to the payments of certain other items by said executors as part of the testamentary expenses, I find in favor of the executor-trustee. It is clearly provided in the will that out of the *corpus* of the estate, namely, out of his interest in the business of A. J. Cameron & Company, as ascertained, there shall come, among other things, his debts, funeral and testamentary expenses, and I therefore find that it is entirely proper, when these have been ascertained, to deduct them; and, with respect to all of such as were ascertained by the orphans court as afore-

said, I instructed the master, and do now find that it was proper to deduct them.

Since the master's report as finally made embodies the various instructions given him by the court from time to time, and I have, in the preceding part of this opinion stated my views with respect to all of the disputed matters, the result is that I dismiss all such exceptions as applied to the final report, by whichever side taken, and confirm the report as made, and will decree accordingly.